## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

ISOM LOWMAN JR.,                      *
                                      *
          Plaintiff,                  *
                                      *
     v.                               *        1:15-CV-02116-ELR
                                      *
PLATINUM PROPERTY                     *
MANAGEMENT SERVICES, INC.,            *
                                      *
          Defendant.                  *
                                      *

_____

## O R D E R

_____

This matter comes before the Court on Defendant's Motion to Dismiss. (Doc. No. 7.) For the reasons stated herein, the Court denies Defendant's motion.

## I.    BACKGROUND[1]

This case centers on Plaintiff's allegations that Defendant denied his rental application based on his race. Plaintiff additionally contends that Defendant subjected him to different qualification standards because of his race.

---

[1]    The Court accepts as true all well-pled factual allegations contained in the complaint.

A.    _Plaintiff's Objection to Defendant's Attached Exhibit_

Before delving into the factual allegations contained in the Complaint, the Court must address whether it may consider an attachment to the Motion to Dismiss. While the Court is ordinarily constrained to the allegations contained in a Complaint, a document attached to a Motion to Dismiss may be considered if the attached document is (1) central to the plaintiff's claim and (2) undisputed.[2] Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Plaintiff has attached a string of e-mail correspondences between himself and Defendant to his Complaint, which specifically addresses any acceptance/denial of Plaintiff's application. Defendant contends that Plaintiff neglected to include a full and complete copy of the e-mail chain, and so Defendant attached a copy of the e-mail chain to its Motion to Dismiss. Plaintiff, despite attaching his own version of the document and citing directly to it in the Complaint, challenges Defendant's attachment, arguing that it is "legally irrelevant and not central to [Plaintiff's claims.]" (Doc. No. 10.) Plaintiff does not appear to challenge the authenticity of the document.

Upon review, Plaintiff regularly quotes from the e-mail chain in his Complaint, which thoroughly details any acceptances or denials of Plaintiff's application, as well as the qualification requirements imposed upon him. Therefore, the Court finds that they form a central basis for Plaintiff's claims that

---

[2]     "Undisputed in this context means that the authenticity of the document is not challenged." Horsley, 304 F.3d at 1134.

he was unlawfully discriminated against in the rental application criteria and his subsequent denial(s). Accordingly, the Court may consider Defendant's attachment.

B.    _Factual Background_

In early February 2015, Plaintiff, an African American male, was shopping for a rental property in Decatur, Georgia. On February 3, 2015, Plaintiff contacted an operations manager employed by Defendant, Ms. Lisa Ragsdale, to view a property located at 1208-4 Scott Blvd., Unit 4, Decatur, Georgia 30030 ("the Property"). The rental payment for the Property equaled $900.00 per month. After Plaintiff expressed an interest in renting the Property, Ms. Ragsdale informed him that he must fill out an application and submit two paystubs, a bank statement, or the summary page of his tax return. Plaintiff submitted the application and attached a bank statement showing "significant liquid assets." (Compl. ¶ 16, Doc. No. 1.) He also attached a copy of his driver's license.

Defendant's Assistant Property Manager, Tiffany Mowbray, contacted Plaintiff after he submitted his application and requested further documentation, including two recent paystubs or the previous year's tax return. (Doc. No. 7-2 at 8.) Plaintiff submitted both. (Id. at 7–8.) Ms. Ragsdale then called Plaintiff and told him that she would let him know if her boss needed any additional information. Shortly thereafter, Ms. Ragsdale requested more documentation from Plaintiff,

specifically his full tax return.[3] (Id. at 7.) Plaintiff responded that he had provided all the information required by the application, and requested an approval or denial as well as the reasons for any such decision. (Id.) Ms. Ragsdale replied that Plaintiff's application was denied because (1) they did not have a clear copy of his driver's license and (2) they were unable to verify his income without a complete tax return. (Id. at 6.)

Even so, Plaintiff continued to communicate with Ms. Ragsdale, stating that he could provide the driver's license and complete tax return, but simply requested an explanation as to why he needed to provide additional information when he was originally told that would not be necessary. (Id.) Plaintiff also inquired as to whether all applicants were required to provide two paystubs, a bank account, a summary of a tax return, and a complete tax return. Ms. Ragsdale responded "at times it is needed." (Id. at 5.) Plaintiff responded that "the law states that the process is to be the same for everyone. Please explain in what times are they needed." (Id.) If Plaintiff was unwilling to provide the additional information, Ms. Ragsdale replied, they would close out his application. (Id. at 4.) Plaintiff, believing that the denial was based upon his race, informed Ms. Ragsdale that he would take the necessary steps to protect his rights. (Id.)

---

[3]     In this e-mail, Ms. Ragsdale also questioned Plaintiff regarding arrests that showed up on his report. (Doc. No. 7-2 at 7.) Defendant's owner, Todd Earley, later informed Plaintiff that a Google search revealed arrests, not a formal criminal background search. (Id. at 1.) Upon searching his own name on Google, Plaintiff states that he could not find any results indicating a criminal record of any kind.

Very shortly thereafter, Mr. Earley contacted Plaintiff to address why numerous documents were requested. Plaintiff ultimately sent the full tax return. After sending the tax return, Plaintiff again e-mailed Mr. Earley and said "You have all of your requested items. What is your decision?" (Id. at 2.) Mr. Earley responded "You are approved." (Id.) However, Plaintiff maintains that due to the discriminatory conduct, he was unable to rent the Property and was required to rent with another landlord for a higher rate.

Plaintiff filed his Complaint on June 12, 2015, asserting three claims: (1) for violation of the Federal Fair Housing Act ("Federal FHA"), 42 U.S.C. § 3601, *et seq.*; (2) violation of 42 U.S.C. § 1982; and (3) violation of the Georgia Fair Housing Act ("Georgia FHA"), O.C.G.A. § 8–3–200 *et seq.* Plaintiff additionally requests attorneys' fees pursuant to O.C.G.A. § 13–6–11. Defendant moved to dismiss.

## II.   LEGAL STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the complaint drawing all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); U.S. v. Stricker, 524 F. App'x 500, 505 (11th Cir. 2013) (per curiam). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft

5

v. Iqbal, 556 U.S 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 555); accord Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007).

Further, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. (citing Twombly, 550 U.S. at 570). Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This so-called "plausibility standard" is not akin to a probability requirement; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. Id.

Even if it is extremely unlikely that a plaintiff will recover, a complaint may nevertheless survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the complaint and not the merits of the case. Twombly, 550 U.S. at 556; see Wein v. Am. Huts, Inc., 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004).

### III.   ANALYSIS

Defendant makes two arguments in support of its motion to dismiss. First, Plaintiff's claims under the Federal FHA, § 1982, and the Georgia FHA must fail because Plaintiff's rental application was approved. Second, Plaintiff's claim under

24 C.F.R. § 100.60(b)(4), which is contained within Count I, fails as a matter of law because the regulations do not provide a cause of action distinct from the Federal FHA statutory scheme.

A.    _Failure To Show The Application Was Denied_

The Federal FHA makes it unlawful "to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race . . . ." 42 U.S.C. § 3604(a). To establish a prima facie case under the Federal FHA, the plaintiff must show the following: (1) he was a member of a protected class; (2) he applied for and was qualified to rent the Property; (3) he was rejected; and (4) the Property remained available thereafter. U.S. Dep't of Hous. & Urban Dev. v. Blackwell, 908 F.2d 864, 870 (11th Cir. 1990). Claims arising under the Georgia FHA and § 1982 are interpreted under the same standard as the Federal FHA. Bailey v. Stonecrest Condominium Ass'n, Inc., 696 S.E.2d 462, 466 n.3 (Ga. Ct. App. 2010) ("Given that the Georgia [FHA] and the [Federal] FHA are nearly identical, we consider federal cases construing the FHA persuasive precedent applicable to the instant dispute."); Farrior v. J.J. Russell & Co., 45 F. Supp. 2d 1358, 1367–68 (N.D. Ga. 1999) (§ 1982). Defendant does not dispute that Plaintiff is a member of a protected class, applied for and was qualified to rent the Property,

or that the Property remained available thereafter. Rather, the dispute in this case centers on the third element: that Plaintiff was rejected.

Defendant's argument is premised on the fact that it ultimately approved Plaintiff's rental application. Plaintiff responds that after he was initially denied, he sought other rental opportunities and signed a lease with another landlord. According to Plaintiff, this occurred *before* Defendant re-evaluated and approved Plaintiff's application.

Here, Plaintiff has alleged that his application was rejected, an allegation supported by the e-mail correspondence provided by Defendant. (Compl. ¶ 27; Doc. No. 7-2 at 6 ("I am so sorry but we will have to deny your application.").) Accordingly, the Court finds that Plaintiff has pled sufficient facts to meet the third element of the prima facie case. The fact that Defendant soon thereafter accepted Plaintiff's application does not alter this result. Indeed, Defendant has cited no case, and the Court can find none, standing for the proposition that the subsequent approval of an application negates a prior denial for the purposes of the Federal FHA.

On this point, Defendant also argues that Plaintiff has suffered no injury because his application was approved shortly after he submitted his application. However, Plaintiff alleges that he "was required to sign a lease with another landlord for a different property at a higher rate." (Compl. § 36; Doc. No. 7-2 at 1

(Plaintiff's e-mail to Todd Earley indicating that, prior to receiving the acceptance of his application with Defendant, he signed a lease with another property).) For these reasons, the Court finds that Plaintiff has sufficiently alleged (1) that his application was rejected and (2) that he suffered an injury from that rejection.

B.      *42 C.F.R. § 100.60(b)*

In Plaintiff's Complaint, Count I appears to address two separate violations of the Federal FHA. First, Plaintiff alleges violation of § 3604(a) based on denial of his rental application, which was addressed above. Second, Plaintiff argues that Defendant violated 42 C.F.R. § 100.60(b) by imposing different qualification standards based on his race. Defendant seeks to dismiss Plaintiff's § 100.60(b) claim, arguing that Plaintiff must still meet the Federal FHA prima facie case and § 100.60 does not create a separate right of action.

As a preliminary matter, the Court has already held that, for the purpose of the instant motion, Plaintiff sufficiently alleged that his application was rejected. Accordingly, the Court turns its attention to Defendant's argument that Plaintiff cannot state a cause of action based on § 100.60.

As the Eleventh Circuit has repeatedly held, "to prevail on a claim under the [Federal] FHA, a plaintiff must demonstrate 'unequal treatment on the basis of race that affects the availability of housing.'" Hallmark Developers, Inc. v. Fulton Cty., Ga., 466 F.3d 1276, 1283 (11th Cir. 2006) (quoting Jackson v. Okaloosa Cty., Fla.,

21 F.3d 1531, 1542 (11th Cir. 1994)). Plaintiff has alleged sufficient facts to support his claim that Defendant violated the Federal FHA by initially rejecting his application and imposing more onerous application requirements on him based on his race. Indeed, binding precedent in this circuit makes clear that "Section 3604(a) is not limited to discriminatory practices by actual lessors and vendors of dwellings. The Fair Housing Act prohibits not only direct discrimination but practices with racially discouraging effects." Evans v. Tubbe, 657 F.2d 661, 663 n.3 (5th Cir. 1981) (internal quotations omitted).[4] Regulations interpreting the Federal FHA list the following as prohibited actions under § 3604(a):

(1) Failing to accept or consider a bona fide offer because of race, color, religion, sex, handicap, familial status, or national origin.

(2) Refusing to sell or rent a dwelling to, or to negotiate for the sale or rental of a dwelling with, any person because of race, color, religion, sex, handicap, familial status, or national origin.

(3) Imposing different sales prices or rental charges for the sale or rental of a dwelling upon any person because of race, color, religion, sex, handicap, familial status, or national origin.

(4) Using different qualification criteria or applications, or sale or rental standards or procedures, such as income standards, application requirements, application fees, credit analysis or sale or rental approval procedures or other requirements, because of race, color, religion, sex, handicap, familial status, or national origin.

---

[4]    Under Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court is bound by cases decided by the former Fifth Circuit before October 1, 1981.

(5) Evicting tenants because of their race, color, religion, sex, handicap, familial status, or national origin or because of the race, color, religion, sex, handicap, familial status, or national origin of a tenant's guest.

24 C.F.R. § 100.60(b).

As other courts have found, without necessarily addressing whether a violation of § 100.60 provides an independent cause of action, § 100.60 does provide a list of discriminatory actions that give rise to a violation of § 3604(a). Neuifi v. Snow Garden Apartments, No. 2:12-cv-00774, 2014 WL 7405472, at *8 (D. Utah Dec. 30, 2014) ("Indeed, courts have held the absence of a formal application may not be fatal in similar circumstances because the broad language of the Fair Housing Act suggests that Congress intended it to reach a range of racially motivated conduct . . . [and] while not dispositive, it is worth noting that the conduct alleged here would also appear to constitute a violation under federal regulations."); Whyte v. Alston Mgmt., Inc., No. 10–81041–CIV, 2011 WL 12450319, at *4 (S.D. Fla. Nov. 1, 2011) (holding that 24 C.F.R. § 100.60(b)(5) provides that an eviction violates § 3604(a)); United States v. Collier, No. 08–0686, 2010 WL 3881381, at *9 (W.D. La. Sept. 28, 2010) ("Prohibited practices under [§ 3604(a)] include imposing different sales prices for the sale of a dwelling, using different qualification criteria, and evicting tenants, because of their race. A discriminatory act that prevents a person from selling or buying residential property may state a claim under section 3604(a)." (internal citation omitted)). But

11

see <u>Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty.</u>
<u>Homeowners Ass'n, Inc.</u>, No. 9:14-cv-80667-ROSENBERG/BRANNON, 2015
WL 5737346, at *3 (S.D. Fla. Oct. 1, 2015) (finding that subsection 3604(a)
requires a concrete refusal to sell or rent a dwelling or a refusal to negotiate for the
occupancy of the dwelling).

Here, Plaintiff alleges that he was subjected to differing financial criteria and
criminal background investigation based on his race. Moreover, Plaintiff alleges,
and the e-mail chain supports, the conclusion that Defendant initially denied the
application.[5] This is sufficient to withstand Defendant's motion to dismiss.
Because the Court finds that Plaintiff has sufficiently stated claims under the
Federal FHA based on (1) the rejection of his application and (2) the imposition of
differing qualification standards, Defendant's motion to dismiss the Georgia FHA,
§ 1982, and attorney's fees claims must also fail.

---

[5]    The Court recognizes that Defendant disputes whether it actually denied Plaintiff's
application. (Doc. No. 15.) However, the e-mail chain includes a statement that the application
was denied and Plaintiff alleges as much in his Complaint. For that reason, and for the purposes
of a motion to dismiss only, the Court accepts as true Plaintiff's allegation that Defendant denied
his application.

12

## IV.   CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant's motion to dismiss (Doc. No. 7).

**SO ORDERED**, this 23rd day of February, 2016.

_Eleanor L. Ross_
ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE